UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. STANCEU, SENIOR JUDGE
------------------------------------------------------------x
KEHOE COMPONENT SALES, INC.,                          :
                                                      :
                              Plaintiff,              :    Court No. 19-00007
                                                      :
              v.                                      :
                                                      :
UNITED STATES,                                        :
                                                      :
                              Defendant.              :
                                                      :
------------------------------------------------------------x

## ORDER

Upon consideration of plaintiff's Motion for Summary Judgment, and all of the pleadings and papers on file herein, and good cause appearing therefor, it is

**ORDERED** that plaintiff's Motion for Summary Judgment be, and hereby is granted; and it is further

**ORDERED** that U.S. Customs and Border Protection shall reliquidate the subject entries under subheading 9032.89.60 of the Harmonized Tariff Schedule of the United States, and shall refund the assessed duties with interest as provided by law.


                                          _____
                                          Timothy M. Stanceu, Senior Judge


Dated this ___ day of _____, 20__
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. STANCEU, SENIOR JUDGE
------------------------------------------------------------x
KEHOE COMPONENT SALES, INC.,               :
                                           :
                           Plaintiff,      :   Court No. 19-00007
                                           :
              v.                           :
                                           :
UNITED STATES,                             :
                                           :
                           Defendant.      :
                                           :
------------------------------------------------------------x

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Kehoe Component Sales, Inc., by its undersigned attorneys and pursuant to United States Court of International Trade Rule 56, respectfully moves for summary judgment. In this action, plaintiff challenges defendant's denial of the protests underlying this action and claims classification for the subject merchandise under subheading 9032.89.60, HTSUS.

Summary judgment is appropriate in this case because there are no genuine outstanding issues of material fact. In support of this motion, plaintiff also submits a Memorandum of Law (together with this motion); a Statement of Material Facts Not in Dispute; and a Declaration of Dale Thomas.

Wherefore, plaintiff respectfully requests this Court to grant its motion and order defendant to reliquidate the subject entries under subheading 9032.89.60, HTSUS, and refund the assessed duties with interest as provided by law.

<div style="text-align:center"></div>

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
*Attorneys for Plaintiff*
707 Wilshire Boulevard. STE 4150
Los Angeles, CA 90017
(213) 624-1970
ESmithweiss@gdlsk.com


By:     /s/ Erik D. Smithweiss
Erik D. Smithweiss
Katherine A. Dobscha


Dated: January 23, 2026
        New York, New York

15115670_1

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. STANCEU, SENIOR JUDGE
------------------------------------------------------------x
KEHOE COMPONENT SALES, INC.,                    :
                                                :
                              Plaintiff,         :   Court No. 19-00007
                                                :
                 v.                             :
                                                :
UNITED STATES,                                  :
                                                :
                              Defendant.         :
                                                :
------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
*Attorneys for Plaintiff*
707 Wilshire Boulevard. STE 4150
Los Angeles, CA 90017
(213) 624-1970

Erik D. Smithweiss
Katherine A. Dobscha


Dated:  January 23, 2026
        Los Angeles, California

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

TARIFF PROVISIONS AT ISSUE ................................................................................... 6

ISSUES OF LAW ............................................................................................................... 6

SUMMARY OF ARGUMENT .......................................................................................... 7

ARGUMENT ...................................................................................................................... 8

    I.    Summary Judgment is Appropriate. ...................................................................... 8

    II.    The Blanket Controllers are Classifiable under Heading 9032 Because they Satisfy the Terms of Chapter 90 Note 7(b). ....................................................................................... 9

        A.    The Blanket Controllers Contain Measuring Devices. ................................. 11

        B.    The Blanket Controllers Contain an Electrical Control Device................................... 13

        C.    The Blanket Controllers Contain a Starting, Stopping, or Operating Device.............. 14

        D.    Judicial Precedent Supports Classification in Heading 9032. ....................................... 15

    III.    The Blanket Controllers are Not Classifiable in Heading 8537. .................................. 18

CONCLUSION.................................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Cases**

*ADC Telecomms., Inc. v. United States*, 916 F.3d 1013 (Fed. Cir. 2019) ...................................... 8

*Archer Daniels Midland Co. v. United States*, 561 F.3d 1308 (Fed. Cir. 2009)........................... 10

*Belimo Automation A.G. v. United States*, 774 F.3d 1362 (Fed. Cir. 2014) ........................... 16, 17

*Degussa Corp. v. United States*, 508 F.3d 1044 (Fed. Cir. 2007) ................................................. 10

*Link Snacks, Inc. v. United States*, 742 F.3d 962 (Fed. Cir. 2014) ................................................. 8

*Photonetics, Inc. v. United States*, 33 CIT 1549, 659 F. Supp. 1317 (Ct. Int'l Trade 2009)...... 8, 9

*Universal Electronics. Inc. v. United States*, 112 F.3d 488 (Fed. Cir. 1997) ................................ 8

*Whirlpool Corp. v. United States.* 505 F. Supp. 2d 1358 (Ct. Int'l Trade 2007)......................... 15

**Statutes**

28 U.S.C. § 1581.............................................................................................................................. 2

28 U.S.C. § 2639.............................................................................................................................. 9

28 U.S.C. § 2640.............................................................................................................................. 8

**Other Authorities**

USCIT R. 56 ..................................................................................................................................... 8

**Rulings**

HQ H246157 (July 23, 2018)........................................................................................................... 5

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. STANCEU, SENIOR JUDGE
-----------------------------------------------------------x
KEHOE COMPONENT SALES, INC.,                  :
                                              :
                      Plaintiff,              :   Court No. 19-00007
                                              :
           v.                                 :
                                              :
UNITED STATES,                                :
                                              :
                      Defendant.              :
                                              :
-----------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

The issue in this case is whether heating blanket control devices ("blanket controllers") that are designed and intended to automatically regulate the level of heat generated by an electrical blanket are properly classified under the Harmonized Tariff Schedule of the United States ("HTSUS") in Heading 9032 as "[a]utomatic regulating or controlling instruments or apparatus . . . ."

U.S. Customs and Border Protection ("CBP") incorrectly classified the subject merchandise upon liquidation under subheading 8537.10.90, HTSUS, which provides for, in relevant part, "[b]oards, panels, consoles, desks, cabinets and other bases, equipped with two or more apparatus of heading 8535 or 8536, for electric control or the distribution of electricity . . . ."

The subject merchandise is fully and specifically described in Heading 9032, HTSUS, as automatic regulating or controlling apparatus.  Plaintiff moves for summary judgment holding

that the subject blanket controllers are classifiable under subheading 9032.89.60, HTSUS, as automatic regulating or controlling instruments or apparatus.

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) and there are no genuine issues of material facts to be resolved at trial. Therefore, summary judgment is appropriate.

## STATEMENT OF FACTS

The subject merchandise consists of heating controllers designed to automatically regulate and control the level of heat generated by an electrical blanket. Plaintiff's Statement of Material Facts Not in Dispute ("PSMF"), ¶ 1. The heating blanket controller models at issue in this action are models KO16 Single, KO16 Dual, TB16 Throw, and G9 Single. *Id*. ¶ 4. The blanket controller provides power to the heating wire of the blanket using a solid-state circuit (microcontroller and semiconductor triac (Alternating Current ("AC") switch)). *Id*. ¶ 5.

The amount of heat that is produced in the blanket is selected by the user on the blanket controller. *Id*. ¶¶ 6, 8. The user selects a heat level setting, which correlates to a programmed amount of time that the voltage is applied to the blanket heating element. *Id*. ¶ 9. The user does not select a specific temperature when it selects the heat level setting. *Id*. ¶ 7. Each heat setting correlates to a programmed amount of time that voltage is applied to the blanket heating element. Specifically, each heat setting corresponds to a specified line cycle count. A line cycle count is a fixed ratio between cycles in which the voltage is connected (heat) and disconnected (no heat), before the sequence repeats. This specified line cycle count is referred to as the "duty cycle." *Id*. ¶ 9. Accordingly, the blanket controllers measure and regulate the voltage that is delivered to the heating element in the blanket, but do not directly measure and control temperature in degrees Fahrenheit. *Id*. ¶¶ 11–13.

2

The blanket controllers contain a potentiometer or switch (depending on the controller model), high resistance voltage dividers, a microcontroller (microprocessor) and an AC semiconductor triac, among other components. *Id*. ¶¶14–16. The microcontroller measures and monitors voltage using a potentiometer (or switch) and a high resistance voltage divider. *Id*. ¶ 17; Thomas Decl. ¶¶ 13, 15. The potentiometer/switch sets the duty cycle associated with the heat setting selected by the blanket user. PSMF ¶ 18. The microcontroller, in conjunction with the potentiometer/switch, measures and determines the voltage that corresponds to the heat setting selected by the user and translates the setting into a corresponding voltage output that will achieve and maintain the selected heat setting. *Id*. ¶ 19. A selected heat setting approximates to a desired temperature. *Id*. ¶ 7.

The blanket controller contains several high resistance voltage dividers. *Id*. ¶ 16. One high resistance voltage divider feeds an electrical signal to the microcontroller that identifies the sinusoidal voltage being input from the wall outlet. *Id*. The high resistance voltage divider identifies when the alternating current (AC) line voltage is at zero, which occurs when the AC line voltage transitions from peak to valley and vice versa. The microcontroller uses the "zero crossing" circuit to measure voltage cycles – it determines when voltage is applied and not applied. *Id*. ¶ 23. The microcontroller, having measured the desired heat setting (which correlates to a specific voltage duty cycle) from the potentiometer and having monitored and measured the timing of the voltage cycles (the voltage being output), sends a signal to the AC semiconductor triac in the controller to apply voltage to the heating element in the blanket based on the desired heat setting. *Id*. ¶ 18.

The AC semiconductor triac acts as a starting and stopping device that turns "on" and turns "off" the voltage being applied to the blanket heating element. The microcontroller sends a

3

signal to the AC semiconductor triac in the heating controller to turn on (apply voltage to the

heating element) during the "on time" in the desired heat setting duty cycle, based on the

information received from the potentiometer.  The microcontroller sends a signal to the triac to

turn off (not apply voltage) during the "off time" in the desired heat setting duty cycle, based on

the information received from the potentiometer.  *Id*. ¶ 24.

The heated blankets contain a monitoring circuit, which consists of a printed circuit board

that is connected to the blanket heating elements.  The blanket heating element is called the

Positive Temperature Coefficient ("PTC") wire.  *Id*. ¶ 26.  The monitoring circuit constantly

measures the voltage that is being applied to the blanket from the triac to ensure that the desired

heat setting is maintained.  *Id*. ¶ 27.  The voltage actually being applied to the heating element by

the triac is the measured value.  *Id*. ¶ 28.  The monitoring circuit continuously monitors and

measures this voltage, then provides a signal back to the microprocessor in the controller.  *Id*.

The desired value is the voltage that should be applied to the heating blanket which correlates to

the heat setting selected by the blanket user.  *Id*.

The monitoring circuit sends the signal to the microprocessor in a form that the

microprocessor can read.  The monitoring circuit's signal is in the form of a waveform sent

through a high resistance voltage divider.  The microprocessor then uses the signal from the

monitoring circuit to verify that the proper voltage has been measured and is therefore being

received at the heating element.  *Id*. ¶ 29.  The microprocessor also counts the duty line cycles

and compares this to the line cycles associated with the selected heat setting, as determined by

the potentiometer.  *Id*. ¶ 30.  If the signal provided by the monitoring circuit does not match the

voltage that is output from the triac, the microcontroller sends a signal to the triac to turn off

voltage.  It then reapplies voltage and restarts the heating process, instructing the triac to apply

voltage to the heating element.  The microprocessor will stop applying voltage and reapply a total of three times before it will report the fault on the controller display and cease heating until complete power-down and reset by the user.  *Id.* ¶ 31.

The monitoring circuit located in the blanket, which sends a signal to the blanket controller, is essential to the operation of the subject blanket controllers.  The blanket controller cannot function without the signal coming back from the blanket monitoring circuit.  *Id.* ¶ 32.

The monitoring circuit provides the critical measurement of voltage being applied in the blanket and sends this measurement through a signal to the microcontroller so that the desired voltage can be maintained in the blanket heating elements.  Thomas Decl. ¶ 26.

The triac acts as a stopping device and does not apply voltage when the microprocessor receives a signal from the monitor circuit and senses that the duty cycle being applied by the triac to the blanket heating element does not match the user-selected voltage (duty cycle).  The microprocessor stops the triac from conducting and turns the triac off so that voltage is not being sent to the heating element.  PSMF ¶ 27.

CBP issued ruling HQ H246157 (July 23, 2018) in response to a protest filed by plaintiff regarding similar blanket controllers.  CBP's ruling classified the blanket controllers in subheading 8537.10.90, HTSUS.

## TARIFF PROVISIONS AT ISSUE

(citations to 2012 HTSUS)

| Heading/Subheading | Description |
|---|---|
| 8537 | Boards, panels, consoles, desks, cabinets and other bases, equipped with two or more apparatus of heading 8535 or 8536, for electric control or the distribution of electricity, including those incorporating instruments of apparatus of chapter 90, and numerical control apparatus, other than switching apparatus of heading 8517: |
| 8537.10 | For a voltage not exceeding 1,000 V: |
| 8537.10.90 | Other . . . . .  2.7% |
| 9032 | Automatic regulating or controlling instruments and apparatus; parts and accessories thereof: Other instruments and apparatus |
| 9032.89 | Other |
| 9032.89.60 | Other . . . . 1.7% |

## ISSUES OF LAW

1.     Whether the blanket controllers are classifiable as automatic regulating or controlling instruments or apparatus in subheading 9032.89.60, HTSUS.

2.     Whether the blanket controllers are classifiable in subheading 8537.10.90, HTSUS.

## SUMMARY OF ARGUMENT

The heating blanket controllers automatically regulate the level of heat generated by an electrical blanket by automatically regulating and controlling the RMS voltage, stabilized against disturbance, that is applied to the heating elements in an electric blanket. Heading 9032, HTSUS, specifically provides for "[a]utomatic regulating or controlling instruments or apparatus." Chapter 90 Note 7(b) defines the characteristics of certain goods of Heading 9032. The blanket controllers satisfy the terms of Note 7(b) because the blanket controllers are designed to bring an electrical quantity – voltage – to, and maintain it at, a desired value by constantly measuring its value. The *Harmonized Commodity Description and Coding System, Explanatory Notes* ("ENs") to Chapter 90 Note 7(b) state that products classifiable under that Note will contain (A) a measuring device, (B) an electrical control device, and (C) a starting and stopping device. The subject blanket controllers contain all three of these components and are therefore specifically provided for in Heading 9032.

The blanket controllers are not classifiable in Heading 8537. Section XVI Note 1(m) excludes from Chapter 85 articles of Chapter 90. Because the blanket controllers are classified in Heading 9032, they are excluded from classification in Heading 8537 by operation of GRI 1 and the above Section Note.

## ARGUMENT

### I. Summary Judgment is Appropriate.

This Court reviews the denial of a protest *de novo*.  28 U.S.C. § 2640(a)(1).  A grant of summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  USCIT R. 56(a).  This case can be resolved by summary judgment as there are no genuine disputed issues of material facts.  The components and functionality of those components in the blanket controllers are not in dispute.  Because these material facts are undisputed, this case is suitable for resolution by summary judgment.

What remains is for the Court to determine whether plaintiff is entitled to judgment as a matter of law.  A classification case generally involves a two-step analysis.  *ADC Telecomms., Inc. v. United States*, 916 F.3d 1013, 1017 (Fed. Cir. 2019).  In the first step, the Court determines the proper meaning of the terms in the relevant tariff provisions, which is a question of law.  *See Link Snacks, Inc. v. U.S.*, 742 F.3d 962, 965 (Fed. Cir. 2014).  In the second step, the Court determines whether the merchandise at issue properly falls within the description of those terms, which is a question of fact.  *Id.*  "However, when there is no dispute as to the nature of the merchandise, then the two-step classification analysis 'collapses entirely into a question of law.'"  *Id*. at 965–66 (citation omitted).

Here, there is no material dispute as to the nature of the subject merchandise.  Accordingly, the classification question before the Court is a question of law.  In such instances, this Court reviews classification cases *de novo*, in accordance with 28 U.S.C. § 2640(a).  *Photonetics, Inc. v. U.S.*, 33 CIT 1549, 1554, 659 F. Supp. 1317, 1321 (Ct. Int'l Trade 2009) (citing *Universal Elecs. Inc. v. U.S.*, 112 F.3d 488, 491–93 (Fed. Cir. 1997).  While a

presumption of correctness attaches to CBP's classifications pursuant to 28 U.S.C. § 2639(a)(1), "this presumption 'is irrelevant where there is no factual dispute between the parties.'" *Id*. at 1553–54 (citations omitted).

## II. **The Blanket Controllers are Classifiable under Heading 9032 Because they Satisfy the Terms of Chapter 90 Note 7(b).**

The subject merchandise consists of controllers designed to control the level of heat generated by an electrical blanket. The controllers operate by automatically regulating and controlling the voltage being applied to an electric blanket to which the controllers are attached. The end result of regulating and controlling the voltage applied to the blanket is to control the level of heat generated in the blanket.

The merchandise was entered in 2012. Chapter 90, Note 7(b) to the 2012 HTSUS states the following:

> Heading 9032 applies only to:
>
> *            *            *
>
> (b) Automatic regulators of electrical quantities, and instruments or apparatus for automatically controlling non-electrical quantities the operation of which depends on an electrical phenomenon varying according to the factor to be controlled, which are designed to bring this factor to, and maintain it at, a desired value, stabilized against disturbances, by constantly or periodically measuring its actual value.

The ENs constitute the official interpretation of the Harmonized System at the international level. While neither legally binding nor dispositive, the ENs provide a commentary on the scope of each heading of the HTSUS and are generally indicative of the proper interpretation of these headings. *Archer Daniels Midland Co. v. United States*, 561 F.3d 1308,

9

1315 (Fed. Cir. 2009) (quoting *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007)).  The ENs to Heading 9032 state the following, in relevant part (emphasis added):

> The automatic regulators of this heading are intended for use in complete automatic control systems which are designed to bring a quantity, electrical or non-electrical, to, and maintain it at, a desired value, stabilized against any disturbances, by constantly or periodically measuring its actual value. They consist essentially of the following devices:
>
> (A) **a measuring device** (sensing device, converter, resistance probe, thermocouple, etc.) which determines the actual value of the variable to be controlled and converts it into a proportional electrical signal.
>
> (B) **an electrical control device** which compares the measured value with the desired value and gives a signal (generally in the form of a modulated current).
>
> (C) **a starting, stopping or operating device** (generally contacts, switches, or circuit breakers, reversing switches, or sometimes, relay switches) which supplies current to an actuator in accordance with the signal received from the control device.
>
> An automatic regulator within the meaning of Note 7(b) to this Chapter consists of the devices described in (A), (B), and (C) above, whether assembled together as a single entity or in accordance with Note 3 to this Chapter, a functional unit.

The subject blanket controllers satisfy the requirements of Chapter 90 Note 7(b) because the controllers are designed to bring an electrical quantity – voltage – to, and maintain it at, a desired value, stabilized against disturbance, by constantly measuring its actual value. Additional U.S. Note 2 to Chapter 90, HTSUS, provides that "[f]or the purposes of this chapter, the term 'electrical' when used in reference to instruments, appliances, apparatus and machines, refers to those articles the operation of which depends on an electrical phenomenon which varies according to the factor to be ascertained."  The blanket controllers automatically regulate an electrical quantity (the application of voltage to the blanket), which generates a non-electrical quantity (heat).

10

The blanket controllers are rated in watts, which is a measure of heat.  The heat setting in watts is calculated by squaring the voltage and dividing by the resistance of the heating element in the blanket (watts = RMS voltage$^2$/wire resistance).  Thomas Decl. ¶ 10.  Accordingly, the heat of the blanket is directly related to the RMS voltage applied to the blanket.  *Id*. The RMS voltage is the value that generates a specific amount of heat.  *Id*.  The blanket controllers measure and regulate the RMS voltage that is delivered to the heating element in the blanket.  As such, the blanket controllers bring an electrical quantity – voltage – to, and maintain it at, a desired value by constantly measuring its actual value.

### A.  The Blanket Controllers Contain Measuring Devices.

As noted above, the ENs to heading 9032 states that automatic regulators under Note 7(b) contain:  "(A) A measuring device (sensing device, converter, resistance probe, thermocouple, etc.) which determines the actual value of the variable to be controlled and converts it into a proportional electrical signal."  The blanket controller contains several components – a potentiometer and high resistance voltage dividers – that operate with the microcontroller as measuring devices that determine the voltage to be applied and controlled.  The potentiometer is a voltage measuring transducer that provides the reference voltage value to the microcontroller. *Id*. ¶ 13.  One of the high resistance voltage dividers identifies the sinusoidal voltage from the wall outlet delivering AC voltage and converts it into an electrical signal sent to the microcontroller.  *Id*. ¶ 17.  The high resistance voltage divider identifies when the alternating current (AC) line voltage is at zero, which occurs when the AC line voltage transitions from peak to valley and vice versa.  The microcontroller uses the "zero crossing" circuit to measure voltage cycles – it determines when voltage is applied and not applied.  *Id*.  Consequently, the blanket controllers satisfy criterion (A) of the ENs because they contain a measuring device that

11

determines the actual value of the variable to be controlled – voltage to be applied to the blanket – and converts it into an electrical signal sent to the microprocessor.

The blanket controllers contain an additional measuring device in the monitoring circuit. This circuit is located in the blanket. *Id*. ¶ 22. The monitoring circuit consists of a printed circuit board that is connected to the blanket heating elements, which is called the Positive Temperature Coefficient ("PTC") wire. *Id*. The monitoring circuit constantly measures the voltage that is being applied to the blanket to ensure that the desired heat setting is maintained. *Id*. ¶ 23. The voltage actually being applied to the heating element is the measured value. The monitoring circuit continuously monitors and measures this voltage, then provides a signal back to the microprocessor in the controller. The desired value is the voltage that should be applied to the heating blanket which correlates to the heat setting selected by the blanket user. *Id*.

The monitoring circuit sends an electrical signal to the microprocessor in a form that the microprocessor can read. The monitoring circuit's signal is in the form of a waveform sent through a high resistance voltage divider. The microprocessor then uses the signal from the monitoring circuit to verify that the proper voltage has been measured and is therefore being received at the heating element. The microprocessor also counts the duty line cycles and compares this to the line cycles associated with the selected heat setting, as determined by the potentiometer. *Id*. ¶ 24.

Based on the foregoing facts, there is no material dispute of fact that the blanket controllers contain a measuring device that determines the actual value of the variable to be controlled – RMS voltage – and sends a signal to the microprocessor. The measuring devices also constantly measure that voltage cycle in the blanket to automatically control the continuous application of the correct voltage to the heating blanket.

## B.  **The Blanket Controllers Contain an Electrical Control Device.**

Each blanket controller contains a **microprocessor**, also referred to as a microcontroller. *Id*. ¶ 12.  The microcontroller compares the measured voltage from high resistance voltage dividers and compares that with desired voltage as measured and determined by the potentiometer/switch.  Based upon those signals, the microprocessor sends a signal to the AC triac to apply voltage to the blanket at the correct duty cycles.

The specific operation of the electrical control device is as follows.  Each heat setting from the potentiometer (or switch) corresponds to a specified line cycle count, which is a fixed ratio between cycles in which the voltage is connected (heat) and disconnected (no heat), before the sequence repeats. This specified line cycle count is referred to as the "duty cycle."  *Id*. ¶ 8. The microcontroller, having measured the desired heat setting (which correlates to a specific voltage duty cycle) from the potentiometer and having monitored and measured the timing of the voltage cycles (from the high resistance voltage dividers), sends a signal to the AC semiconductor triac in the controller to apply voltage to the heating element in the blanket based on the desired heat setting.  *Id*. ¶ 18.  The microcontroller sends a signal to the AC semiconductor triac in the heating controller to turn on (apply voltage to the heating element) during the "on time" in the desired heat setting duty cycle, based on the information received from the potentiometer.  The microcontroller sends a signal to the triac to turn off (not apply voltage) during the "off time" in the desired heat setting duty cycle, based on the information received from the potentiometer.  *Id*. ¶ 20.

Based on the foregoing, there is no genuine dispute that the subject blanket controllers contain an electrical control device that compares the desired value (amount of RMS voltage) as set by the potentiometer with the measured value (RMS voltage) from the monitor circuit.  The

13

microcontroller sends an electrical signal to the triac to apply or turn off voltage as required to automatically maintain the desired RMS voltage in the blanket.

## C.  **The Blanket Controllers Contain a Starting, Stopping, or Operating Device.**

The third component listed in the ENs for automatic regulators of Heading 9032 under Note 7(b) is a "starting, stopping or operating device . . .  which supplies current to an actuator in accordance with the signal received from the control device."  The blanket controllers contain an AC semiconductor triac.  *Id.* ¶¶ 12, 18, 19.  The AC semiconductor triac acts as a starting and stopping device that turns "on" and turns "off" the voltage being applied to the blanket heating element.  *Id.* ¶ 19.  The microcontroller sends a signal to the AC semiconductor triac in the heating controller to turn on (apply voltage to the heating element) during the "on time" in the desired heat setting duty cycle, based on the information received from the potentiometer.  The microcontroller sends a signal to the triac to turn off (not apply voltage) during the "off time" in the desired heat setting duty cycle, based on the information received from the potentiometer.  *Id.* ¶ 20.

Based on the foregoing, there is no genuine factual dispute that the subject blanket controllers contain a starting, stopping, or operating device that supplies current in accordance with the signal received from the microprocessor.  As established above, the blanket controllers contain a measuring device and an electrical control device that measure and determine the desired RMS voltage value, and constantly measure the voltage that is being applied to the blanket from the triac to ensure that the desired heat setting is maintained.  The controllers are therefore properly classified in Heading 9032.

14

### D.  **Judicial Precedent Supports Classification in Heading 9032.**

In *Whirlpool Corp. v. United States.* 505 F. Supp. 2d 1358 (Ct. Int'l Trade 2007), this Court determined that a device that measures time satisfies the measuring device criteria of Heading 9032.  There, the Court found that a refrigerator control box subassembly was classified under Heading 9032 because the defrost timer and the thermostat within the subassembly **both** fell within the definition of "automatic regulating or controlling instruments or apparatus." *Id*. at 1366.  Significantly, the defrost timer in that case *functioned by monitoring the compressor run time and using that information to regulate when the defrost heater was on or off.  Id*. at 1364. This was done by *automatically gathering information as to the length of time the compressor had run* and automatically allowing the temperature to readjust when the function was complete. *Id*.  While the defrost timer monitored time, the purpose and intended outcome of the device's function was temperature control, and thus the defrost timer was properly classified under Heading 9032.  *Id*.

*Whirlpool* was decided under the 1999 version of Chapter 90 Note 7(b), which provided for "[a]utomatic regulators of electrical quantities, and instruments or apparatus for automatically controlling non-electrical quantities the operation of which depends on an electrical phenomenon varying according to the factor to be controlled."  *Id*. at 1363 fn. 10.  Although Note 7(b) was amended to *add* additional criteria,[1] the first operative sentence of the Note remains unchanged since the *Whirlpool* decision.

Like the defrost timer in *Whirlpool*, the subject controllers measure time in order to control temperature (while the heat settings are not correlated to a specific temperature,

---

[1] The text added to Note 7(b) reads, "which are designed to bring this factor to, and maintain it at, a desired value, stabilized against disturbances, by constantly or periodically measuring its actual value."

they are correlated to heat level).  The defrost timers at issue in *Whirlpool* monitored the compressor run time to regulate when power should be directed to the defrost heater and heat should be turned on or off.  Similarly, the subject blanket controller's measure and monitor time to determine when voltage (and thus heat) should be on or turned off.  Based upon the selected heat setting, the subject controllers function by counting line cycles which are correlated to a programmed time period that the voltage is applied versus disconnected.  Thomas Decl. ¶ 24.  Like the defrost timers and refrigerator control box that were the subject of the *Whirlpool* case, the intended purpose of the controllers is the automatic regulation of desired heat (cooling) settings and, as such, the subject controllers should be classified under Heading 9032.

While *Whirlpool* supports classification in Heading 9032, the subject blanket controllers have functionality beyond that of the device at issue in *Whirlpool*.  The blanket controllers, in addition to monitoring time (the duty-cycle time), separately satisfy criterion (A) to the ENs to Note 7(b) because they measure voltage applied to the blanket heating elements and send an electrical signal to the microprocessor.  The microprocessor within the blanket controller uses the signal from the monitor circuit to constantly monitor the applied voltage to determine whether the proper voltage is flowing through the blanket heating element.  In the event that the signal is not correct when voltage is applied to the heating element, the microcontroller will signal the triac to disconnect and will restart the line cycle count and voltage flow in a repeating sequence.  *Id.* ¶¶ 24–25.

In *Belimo Automation A.G. v. United States*, 774 F.3d 1362 (Fed. Cir. 2014), the Court of Appeals construed the scope of Heading 9032 and the current Chapter 90 Note 7.  Although that Court concluded that the device at issue in *Belimo* was not classified in Heading 9032 because it did not measure any of the values specified in Note 7(a) (the actuators are not "designed to

16

measure the actual value of temperature, or some other variable of air such as flow, level or pressure."), 774 F.3d at 1365, the Court of Appeals noted that the scope of Note 7 encompasses devices that measure a variable indirectly. The Federal Circuit noted that "'in some cases, a simple device which is sensitive to changes in the variable . . . may be used instead of a measuring device.'". *Id*. (quoting from the ENs). An example cited by the Court, quoting appellant's brief, is "pressure regulators [that] may operate based on the force exerted on 'an adjustable spring'." *Id*. It is not necessary that a pressure regulator of Heading 9032 measures the actual pounds per square inch (PSI). It is enough that it detects that a specified pressure is present and sends a signal to an electronic control device.

The subject blanket controllers meet this standard. While it is true that the blanket controllers do not contain a voltmeter, they nonetheless measure the presence of AC line voltage in the electric blanket heating elements, and they transmit a signal based on that measurement to the microcontroller. This is no different than detecting a specified amount of pressure. This voltage measurement is continuous, and if the correct voltage is not detected in this measurement, the microprocessor sends a signal to the triac to restart the duty cycle to ensure that the correct voltage is applied to the blanket. As the subject blanket controller measures and monitors the value of the variable to be controlled (voltage which translates to heat), the controller satisfies the criteria for classification in Heading 9032.

**III.** **The Blanket Controllers are Not Classifiable in Heading 8537.**

Heading 8537 broadly provides for "boards, panels, consoles, desks, cabinets and other bases . . . for electric control or the distribution of electricity."  Whether or not the blanket controllers fit the description of Heading 8537, the controllers are precluded from classification in Heading 8537 by operation of GRI 1 and Section XVI Note 1(m).  Section XVI Note 1(m) expressly excludes articles of Chapter 90 from classification in Chapter 85.  The Section Note states, "[t]his section [XVI] does not cover: . . . (m) Articles of Chapter 90."  The exclusion from classification in Heading 8537 is further emphasized by the ENs to heading 8537, which state, "[t] heading does not cover automatic controlling apparatus of heading 90.32."  As set forth above, the blanket controllers meet the criteria for classification in Heading 9032.  Consequently, the blanket controllers are expressly excluded from classification in subheading 8537.10.90.

## **CONCLUSION**

The subject blanket controllers are classifiable as "[a]utomatic regulating or controlling instruments or apparatus" in subheading 9032.89.60, HTSUS.  For the foregoing reasons, plaintiff respectfully requests that the Court grant its motion for summary judgment and order CBP to reliquidate the subject entries with classification of the subject merchandise under subheading 9032.89.60, HTSUS, and to refund the excess duties paid with interest as provided by law.

<div style="margin-left:40%">

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
*Attorneys for Plaintiff*
707 Wilshire Boulevard. STE 4150
Los Angeles, CA 90017
(213) 624-1970
ESmithweiss@gdlsk.com

By:     /s/ Erik D. Smithweiss
        Erik D. Smithweiss
        Katherine A. Dobscha

</div>

Dated:  January 23, 2026
        Los Angeles, California

19

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to USCIT Standard Chambers Procedures Rule 2(B), I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 4,966 words including text, headings, footnotes, and quotations.  This word count is within the limit of 14,000 words set forth in Rule 2(B).

<u>/s/ Erik D. Smithweiss</u>
Erik D. Smithweiss
Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP
707 Wilshire Boulevard. STE 4150
Los Angeles, CA 90017
(213) 624-1970

Dated: January 23, 2026
        Los Angeles, California