UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, JUDGE

| | |
|---|---|
| KEHOE COMPONENTS, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 19-00007 |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
*Attorneys for Plaintiff*
599 Lexington Avenue, FL 36
New York, New York 10022
(212) 557-4000
Erik D. Smithweiss
Katherine A. Dobscha

Dated: November 20, 2026
New York, New York

# TABLE OF CONTENTS

Contents

**INTRODUCTION** ... 1

**SUMMARY OF ARGUMENT** ... 2

**ARGUMENT** ... 4

**I. The Blanket Controllers Satisfy the Terms of Chapter 90 Note 7(b)** ... 4

**A. The Controllers Measure the Actual Value of the Voltage Distributed to the Electrical Blankets** ... 5

i. The Controllers are Not Required to Directly Measure Exact Temperatures in Order to Satisfy the Requirements of Note 7(b) ... 6

ii. The Controllers Measure the Actual Value of Voltage within the Meaning of Note 7(b) by Measuring the Presence of the Voltage Above a Required Threshold ... 7

iii. The Government Acknowledges that Controllers "Detect" and "Monitor" the Actual Value of Voltage within the Meaning of Note 7(b) ... 11

**B. The Controllers Stabilize the Voltage Distributed to the Blankets Against Disturbance** ... 13

**II. The Blanket Controllers are Classifiable in Heading 9032 and are Therefore Excluded from Classification in Heading 8537** ... 15

**CONCLUSION** ... 16

# TABLE OF AUTHORITIES

**Cases**

*Amoena USA Corp. v. United States*, 822 F. Supp. 3d 1372 (Ct. Int'l Trade 2026) ...................... 10

*Avenues in Leather, Inc. v. United States*, 423 F.3d 1326 (Fed. Cir. 2005) .................................. 16

*Gerson Co. v. United States*, 898 F.3d 1232, (Fed. Cir. 2018) ...................................................... 16

*Russell Stadelman & Co v. United States*, 242 F.3d 1044, 1048 (Fed. Cir. 2001) ....................... 10

**Other Authorities**

*Detect*, Merriam Webster,
[https://perma.cc/N7CV-CHLW] (last visited November 10, 2026) ............................................. 1

*Detect*, Oxford Learner's Dictionaries,
[https://perma.cc/UK9U-WD2R] (last visited November 10, 2026) ........................................... 12

*Measure*, Merriam-Webster,
[https://perma.cc/6ND2-KAQ6] (last visited November 10, 2026)............................................. 10

*Monitor*, Merriam-Webster,
[https://perma.cc/NXH6-YLQF] (last visited November 10, 2026)............................................ 12

*Monitor*, Oxford Learner's Dictionaries,
[https://perma.cc/JM9X-PAQE] (last visited November 10, 2026)............................................ 13

*Monitor*, Oxford Reference,
[https://perma.cc/PS74-5RA6] (last visited November 10, 2026). .............................................. 12

**Rules**

U.S. Court of International Trade ("USCIT") Rule 56(a)............................................................ 3

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, JUDGE

-------------------------------------------------------------x

| | | |
|---|---|---|
| KEHOE COMPONENT SALES, INC. | : | |
| | : | |
| Plaintiff, | : | Court No. 19-00007 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

-------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

This case concerns the tariff classification of heating blanket control devices ("blanket controllers") under the Harmonized Tariff Schedule of the United States ("HTSUS"). Plaintiff respectfully submits this reply brief in response to defendant's ("the Government") opposition to plaintiff's motion for summary judgment and in response to defendant's cross-motion for summary judgment. ECF No. 71, Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Def.'s Mem.").

U.S. Customs and Border Protection ("CBP") incorrectly classified the subject merchandise upon liquidation under subheading 8537.10.90, HTSUS. The subject merchandise is specifically described in Heading 9032, HTSUS, as automatic regulating or controlling instruments or apparatus.

For the reasons set forth below, plaintiff respectfully request that the Court enter a judgment order: (1) granting plaintiff's motion for summary judgment, (2) ordering Customs to

reliquidate the subject entries with classification of the subject merchandise under 9032.89.60, HTSUS, and to refund the excess duties paid with interest as provided by law, and (3) denying defendant's cross-motion for summary judgment.

**SUMMARY OF ARGUMENT**

The Government's arguments set forth in its response to plaintiff's motion for summary judgment and cross-motion for summary judgment should be rejected.

There are no material issues of fact and as such the Court can enter summary judgment for plaintiff. The Government admits, notwithstanding objections, key facts concerning the components and function of the blanket controllers. *See* ECF 71-2, Defendant's Statement of Material Facts Not in Dispute ("DSMF"), ¶¶ 10-14, 16-20, 22, 24-26, 28, 30-33, 36; ECF 71-3, Defendant's Response to Plaintiff's Statement of Material Facts ("Def's PSMF Response"), ¶¶ 5-10, 12, 14, 15, 16, 18, 20-32.

The Government admits that the blanket controllers' heat level settings correlate to a programmed amount of time that the controllers apply voltage to the heating elements in the blankets or throws. DSMF ¶ 10. The controllers have an operating range from 108 to 132 volts. DSMF ¶ 36. The Government admits that the controllers include a potentiometer or switch, a zero-crossing circuit (which includes a high resistance voltage divider), a microcontroller (also referred to as a microprocessor), and an AC semiconductor triac. *Id.* ¶ 18. The Government admits the microprocessor counts line cycles by detecting when the AC line voltage is at zero and uses this information to determine "when to connect or disconnect voltage to the heating elements in an electrical blanket in view of the selected heat level setting as reported by the potentiometer." Def's PSMF Response ¶ 30; *see* DSMF ¶ 20. The Government admits that the monitoring circuit in the blankets sends a signal to the microprocessor, and that the monitoring

circuit monitors the voltage applied to the blanket by the triac and avers that the circuit detects when voltage is flowing through the heating element. DSMF ¶ 19; Def's PSMF Response ¶ 27. The Government admits that the monitoring circuit in the blanket provides a signal that "allows the microcontroller/microprocessor to determine whether the voltage is properly flowering through the heating element in an electrical blanket" and "that, if the signal from the monitoring circuit indicates a disruption in the flow of voltage (e.g., caused by a wire break), the microcontroller/microprocessor will stop applying voltage and restart the programmed sequence for the selected heat level setting a total of three times before it will report the fault on the controller display and cease applying voltage until complete power-down and reset by the user." Def's PSMF Response ¶ 31; *see also* DSMF ¶¶ 21, 28, 30. The Government also admits that the controllers cannot function without a signal coming back from the blanket. Def's PSMF Response ¶ 32.

A grant of summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." U.S. Court of International Trade ("USCIT") Rule 56(a). The material facts regarding the physical characteristics of the subject merchandise and intended uses are not contested. Accordingly, what remains is for the Court to determine whether plaintiff is entitled to judgment as a matter of law. The classification question before the Court is a question of law—whether the subject merchandise is classified in Heading 9032 or in Heading 8537.

As a matter of law, Kehoe's heating blanket controllers cannot be classified in Heading 8537 because they are specifically provided for in Heading 9032. The blanket controllers satisfy the terms of Note 7(b) to Chapter 90, which defines the characteristics of goods of Heading 9032. The blanket controllers are designed to bring an electrical quantity – voltage – to, and

maintain it at, a desired value by constantly measuring its value. The controllers and monitoring circuit in the blanket measure and monitor the actual amount of voltage distributed to the electrical blankets that is within a specified range necessary for the blankets to function at the desired heat setting.

## ARGUMENT

### I. The Blanket Controllers Satisfy the Terms of Chapter 90 Note 7(b)

Chapter 90, Note 7(b) to the 2012 HTSUS states that Heading 9032 applies to: "Automatic regulators of electrical quantities, and instruments or apparatus for automatically controlling non-electrical quantities the operation of which depends on an electrical phenomenon varying according to the factor to be controlled, which are designed to bring this factor to, and maintain it at, a desired value, stabilized against disturbances, by constantly or periodically measuring its actual value."

The Government incorrectly argues that the blanket controllers "do not meet the terms of Note 7(b) because they are not 'designed to bring this factor [to be controlled - voltage] to, and maintain it at, a desired value, stabilized against disturbances, by constantly or periodically measuring its actual value.'" Def.'s Mem. at 20.

The Government asserts that the controllers do not meet the requirements in Chapter 90, Note 7(b) for classification under heading 9032 because "the controllers merely distribute voltage to electrical blankets for a preprogrammed amount of time, depending on the user's selected heat level setting. While the controllers have a safety feature that allows them to detect whether voltage is flowing correctly (e.g., there is not a disruption caused by a break in a wire), they do not measure the actual amount of voltage they distribute to the electrical blankets, nor do they stabilize that voltage against disturbance." Def.'s Mem. at 11.

The subject blanket controllers satisfy the requirements of Chapter 90 Note 7(b) because the controllers are designed to bring an electrical quantity – voltage – to, and maintain it at, a desired value, stabilized against disturbance, by constantly measuring its actual value.

The blanket controllers contain several measuring devices, which "determine [] the actual value of the variable to be controlled and convert[] it into a proportional electrical signal." EN to Heading 9032. *See* DSMF ¶¶ 18-20; Def's PSMF Response ¶¶ 15, 16, 18, 26-28; Declaration of Dale Thomas ("Thomas Decl.") ¶¶ 11-26.

The controllers in the blanket measure the actual value of the controlled quantity – the application of voltage to the blanket. *See* ECF 28, Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mem.") at 12; Thomas Decl. ¶ 7. The microcontrollers (microprocessors) in the blanket controllers measure and monitor voltage using a potentiometer (or switch) and a high resistance voltage divider. *See* Pl.'s Mem. At 3; 11-12; Thomas Decl. ¶¶ 13, 15; DSMF ¶ 22; Def's PSMF Response ¶¶ 15, 16, 18. The microcontroller measures the voltage applied to the blanket. The blankets also contain a monitoring circuit, which constantly measures the voltage that is being applied to the blanket from the AC semiconductor triac in the controllers to ensure that the desired heat setting is maintained. Pl.'s Mem. at 4; 12; Thomas Decl. ¶¶ 22-24; Supplemental Declaration of Dale Thomas ("Thomas Supp. Decl.") ¶ 8; DSMF ¶ 26; Def's PSMF Response ¶ 26-29. As explained in greater detail below, these components in the controllers measure the actual amount of voltage, within a specified range, that is distributed to the electrical blankets for the blankets to function at the desired heat setting.

## A. <u>The Controllers Measure the Actual Value of the Voltage Distributed to the Electrical Blankets</u>

i. <u>The Controllers are Not Required to Directly Measure Exact Temperatures in Order to Satisfy the Requirements of Note 7(b).</u>

The Government repeatedly argues that the blanket controllers do not measure temperature and do not measure the actual amount of voltage that is applied to the heating elements in the electric blankets. Def.'s Mem. At 5 (citing Thomas Dep. at 25:18-21, 66:21-67:3, 69:7-70:11, 89:5-22); *Id*. at 6 (citing Thomas Dep. At 23:2-25:12); *Id*. at 7 (citing Thomas Dep. At 45:14-48:18, 122:10-126:14; Govt. Exh. 11, Sunbeam PTC Wire Safety Circuit Operations Manual).

It is undisputed that the controllers do not directly measure temperature. DSMF ¶¶ 15, 21, 23, 29; Def's PSMF Response ¶ 12; Thomas Decl. ¶¶ 11, 15. However, the controllers are not required to directly measure temperature in order to satisfy the requirements of Note 7(b). Accordingly, the Government's repeated assertions that the controllers do not measure temperature have no bearing on whether the controllers satisfy the requirements of Note 7(b) by measuring and monitoring an electrical quantity. The controllers allow the user to select the amount of heat that is produced in the blanket. The user selects a heat level setting, which correlates to a programmed amount of time that the voltage is applied to the blanket heating element. Plaintiff's Statement of Material Facts Not in Dispute ("PSMF"), ¶¶ 6, 8; Pl.'s Mem. at 2; DSMF ¶¶ 7, 8; Def's PSMF Response ¶¶ 7, 8; Thomas Decl. ¶¶ 6-9. The amount of time that voltage is applied to the blanket (heat) and not applied (no heat) is referred to as the "duty cycle." PSMF ¶ 9; Pl.'s Mem. at 2; DSMF ¶ 14; Def's PSMF Response ¶ 9. Accordingly, the blanket controllers measure and regulate the voltage that is delivered to the heating element in the blanket, but do not directly measure and control temperature in degrees Fahrenheit. PSMF ¶¶ 11-13; Pl.'s Mem. At 2; DSMF ¶¶ 15, 21, 23, 29; Def's PSMF Response ¶¶ 12; Thomas Decl. ¶¶ 11, 15.

ii. <u>The Controllers Measure the Actual Value of Voltage within the Meaning of Note 7(b) by Measuring the Presence of the Voltage Above a Required Threshold</u>

The Government argues that the controllers do not measure the actual value or amount of voltage that is applied to the heating element in the electric blankets. Def.'s Mem. at 5 (citing Thomas Dep. at 25:18-21, 66:21-67:3, 69:7-70:11, 89:5-22); *Id*. at 6 (citing Thomas Dep. at 23:2-25:12); *Id*. at 20 (citing Thomas Dep. At 97:22-25; Thomas Decl. at ¶¶ 8, 19-20). The Government incorrectly asserts that the controllers do not measure the actual value of voltage that is applied to the blankets as required by Note 7(b) because "the controllers cannot determine whether they are transmitting 108 volts or 130 volts to the blanket, nor can they detect fluctuations in the voltage." Def.'s Mem. At 21 (citing Thomas Dep. at 35:21-25, 58:21-61:12, 66:21-67:21).

The Government cites Mr. Thomas's confirmation that the microprocessor does not identify the exact numerical voltage within a voltage range as support for the argument that the microprocessors and monitoring circuit do not measure the "actual value" of the voltage distributed to the blankets. Def.'s Mem. At 20 (citing Thomas Dep. At 97:22-25; Thomas Decl. at ¶¶ 8, 19-20). In his deposition, Dale Thomas confirmed that the microprocessor in the controller and the monitoring circuit in the blanket do not need to identify an exact numerical voltage within a voltage band for the devices to properly measure the actual voltage in the blankets.

Dale Thomas explained that the controller "is not a precision device" and instead operates within an allowable volt range or tolerance. Thomas Supp. Decl. ¶ 7; Thomas Dep. At 67:25-68:2-6. "[O]nce you [the user] set it to your favorite heat level, the bound of variation in voltage around that initial value is very small and well within the tolerance that one could tolerate, as far as variation and the heat." Thomas Dep. At 68:16-20. Mr. Thomas further explained that the controller is "not a temperature controller" because it "doesn't need to be." That's a very

specific, very precise kind of control, and this device [the heating blanket] is a heat generator and its rated in watts, not degrees." Thomas Dep. At 69:22-70:2. "So to do an electric blanket . . . you don't need that precision [of a voltmeter]." Thomas Dep. At 107:11-13. The blankets "work[] within acceptable tolerances." Thomas Dep. At 107:20-108:2. *See* Thomas Supp. Decl. ¶¶ 6-8.

While the controllers do not contain precision "voltmeters," they nonetheless measure the amount of voltage flowing to the blanket heating element. Thomas Supp. Decl. ¶ 7. The blanket controllers measure the actual value of the RMS voltage delivered to the heating element in the blanket by constantly measuring and monitoring when voltage is applied and not applied. *See* Pl's. Memo at 10-11, 17; Thomas Decl. ¶¶ 10, 11, 23, 24; DSMF ¶ 26; Def's PSMF Response ¶ 27, 28, 29 . The controllers measure the RMS voltage by measuring the amplitude of the voltage. Thomas Decl. ¶¶ 16, 17; Thomas Supp. Decl. ¶ 8. The controllers are produced in accordance with the United States electric code, which dictates that the standard household voltage for residential electrical systems must be nominally 120 volts, plus or minus 5 percent (114 to 126 volts) under standard conditions and nominally 120 volts, plus or minus 10 percent (108 to 132 volts) under atypical, conditions. Thomas Supp. Decl. ¶¶ 2-6; *See* Thomas Dep. 66;9-12, 16-17. When the heating blankets are plugged in, the controllers operate using the power within these limits of voltage flowing through the household outlet. Thomas Supp. Decl. ¶¶ 2-4; Thomas Dep. 106:9-14. In order for the controllers to operate, the microprocessor and monitoring circuit must measure whether the voltage is applied to the heating blanket element within this specified range of 114-126 volts under standard circumstances and 108-132 volts under atypical, stressed conditions. Thomas Supp. Decl. ¶¶ 5-6. The monitoring circuit measures, using a high resistance voltage divider, to determine if the voltage at the circuit has reached a value above a certain threshold. Thomas Supp. Decl. ¶ 8; Thomas Dep. at 112:3-5, 8-10 (stating "It's got to have a

reasonable value of amplitude before we say that signal made it all the way through to the end of the blanket.”). The resistors in the high resistance voltage divider produce a reduced voltage proportional to the A/C line voltage that is applied to the heating element. The reduced voltage must reflect that the applied voltage amplitude is high enough to exceed the hardware threshold, which is approximately 29.6 volts, to establish that the A/C line voltage is within the required range. Thomas Supp. Decl. ¶ 8. The monitoring circuit sends a signal to the microprocessor based on the measurement in an AC waveform through a high resistance voltage divider. Thomas Supp. Decl. ¶ 8; DSMF ¶¶ 19, 20, 28; Def's PSMF Response ¶¶ 27-29; Thomas Decl. ¶ 24.

The microprocessor then uses the signal from the monitoring circuit to verify that the proper voltage has been measured and is therefore being received at the heating element. DSMF ¶¶ 28, 30-31; Def's PSMF Response ¶¶ 28, 29. Thomas Decl. ¶ 24; Thomas Supp. Decl. ¶ 8. The microprocessor also counts the duty line cycles and compares this to the line cycles associated with the selected heat setting, as determined by the potentiometer. *See* Pl.'s Mem. At 12; Def's PSMF Response ¶¶ 30, 31; Thomas Decl. ¶ 24. Mr. Thomas stated in his deposition that the monitoring circuit monitors the AC waveform and “measures them in the sense that [they have] to exceed a certain voltage level . . . . it's got to have a certain amount of voltage amplitude before that monitor circuit will pass the information back to the microprocessor to say it looks right.” Thomas Dep. at 111:2-8, 18-23; *See* Thomas Supp. Decl. ¶ 8. By measuring the presence of the AC line voltage in the electric blanket heating elements, the controllers measure the controlled electrical quantity (the application of voltage to the blanket).

The controllers do not need to measure the precise voltage like a voltmeter because any voltage within this range is sufficient for the blankets to properly function. Thomas Supp. Decl. ¶ 7. In order for the blankets to maintain the desired heat setting selected by the users, the

microprocessor and monitoring circuit must measure and regulate voltage within a small, allowable tolerance that correlates to the desired heat setting. *Id.* at ¶ 8. This measurement of the application of voltage within an allowable tolerance or range is necessary for the blanket to function and therefore constitutes the measurement of the "actual value" of the controlled electrical quantity – the voltage applied to the heating element in the blanket.

The dictionary meaning of "measuring" further supports that the measurement of voltage application within the required range satisfies the requirements of Note 7(b). The Note does not define the term "measuring." The Explanatory Notes ("ENs") to Heading 9032 state that the automatic regulators of the heading contain "[a] measuring device (sensing device, converter, resistance probe, thermocouple, etc.) which determines the actual value of the variable to be controlled and converts it into a proportional electrical signal." The ENs do not otherwise define "measuring." When "a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is its common or dictionary meaning in the absence of evidence to the contrary." *Amoena USA Corp. v. United States*, 822 F. Supp. 3d 1372, 1377 (Ct. Int'l Trade 2026) (*quoting Russell Stadelman & Co v. United States*, 242 F.3d 1044, 1048 (Fed. Cir. 2001)). The Merriam-Webster definition for "measure" includes "to ascertain the measurements of" or "to estimate or appraise by a criterion." *Measure*, Merriam-Webster, [https://perma.cc/6ND2-KAQ6] (last visited November 10, 2026). Appraising by a criterion does not require determining a precise numerical figure. The controllers do not need to determine an exact numerical voltage in order to measure and monitor the voltage being applied to the heating elements in the blanket. Thomas Suppl. Decl. ¶ 7. The controller appraises the voltage amplitude to determine whether voltage is present within the required criterion, which is the range of 114-126 volts under

standard conditions and 108-132 volts under atypical conditions. Thomas Suppl. Decl. ¶¶ 5-6. The controllers measure the actual voltage value within the dictionary meaning of the word.

Chapter 90, Note 7(b) does not specify that the measuring device(s) in an automatic controlling apparatus must measure and monitor an exact numerical value. In Note 7(b), the actual value is the measurement of the factor being controlled, which is compared to a desired value. Here, the factor being controlled is the application of voltage to the heating element in the blanket within a particular range (114-126 volts under standard conditions and 108-132 volts under atypical conditions). The controllers measure and monitor the controlled variable by measuring the voltage amplitude. Thomas Suppl. Decl. ¶¶ 5-6. As set forth above, the measurement of the voltage amplitude is the measurement of an actual value. Note 7(b) does not contain a requirement that a device measure the exact numerical value of the controlled variable.

iii. <u>The Government Acknowledges that Controllers "Detect" and "Monitor" the Actual Value of Voltage within the Meaning of Note 7(b)</u>

The Government admits in its response to PSMF paragraph 27 that "monitoring circuit *monitors* the voltage applied to the blanket" and avers that the monitoring circuit "is used to *detect* when voltage is flowing through the heating elements . . . . " Def's PSMF Response ¶ 27 (emphasis added). In acknowledging that the monitoring circuit "monitors" and "detects" voltage, the Government acknowledges that the controllers measures voltage within the dictionary meanings of these terms.

The Merriam-Webster dictionary definition of "detect" is "to discover or determine the existence, presence, or fact of" something. *Detect*, <u>Merriam Webster</u>, [https://perma.cc/N7CV-CHLW] (last visited November 10, 2026). The Oxford Learner's Dictionaries state that "detect" means "to discover or notice something," and provides the following example: "The sensor detects changes in light level and temperature." *Detect*, <u>Oxford Learner's Dictionaries</u>,

[https://perma.cc/UK9U-WD2R] (last visited November 10, 2026). Similarly, detecting voltage encompasses determining the presence of voltage. The controllers necessarily measure the voltage when they detect the voltage when it is flowing, and the change in that condition when the voltage is not flowing. The controllers determine whether the voltage applied to the heating element is above or below a threshold. The controllers sense and evaluate the electrical quantity, which is clearly a form of measurement.

The Oxford Reference platform defines “monitoring” as “routine, often episodic measurement, performance analysis, or supervision of a process, activity, or function with the aim of detecting and correcting change or deviation from desirable levels.” *Monitor*, Oxford Reference, [https://perma.cc/PS74-5RA6] (last visited November 10, 2026). Thus, the dictionary meaning of the term “monitoring” includes routine measurement. Further, “monitoring” includes measuring for the purpose of correcting or stabilizing the measured function or quantity. Thus, monitoring voltage encompasses measuring voltage for the purpose of stabilizing the voltage against disturbances to maintain the desired voltage level.

The Merriam-Webster definition for “monitor” is “to watch, keep track of, or check usually for a special purpose.” An example of the use of the word in a sentence is “Nurses *monitored* the patient's heart rate.” *Monitor*, Merriam-Webster, [https://perma.cc/NXH6-YLQF] (last visited November 10, 2026). The Oxford Learner’s Dictionaries definition for “monitor” is “to watch and check something over a period of time in order to see how it develops, so that you can make any necessary changes.” *Monitor*, Oxford Learner’s Dictionaries, [https://perma.cc/JM9X-PAQE] (last visited November 10, 2026). These definitions demonstrate that monitoring, or keeping track of, a quantity requires measuring that quantity.

The above definitions establish that the common meaning of the term "monitoring" encompasses tracking or observing a quantity or variable, such as voltage, over time. Such monitoring inherently requires determining the variable value or condition and therefore constitutes measurement. When the microcontroller and monitoring circuit track whether the voltage is within an acceptable range and determine whether the voltage is present or absent, the controllers are measuring the voltage under the dictionary meaning of the term. This monitoring necessarily involves measuring the voltage, including within a range or threshold.

### B. <u>The Controllers Stabilize the Voltage Distributed to the Blankets Against Disturbance</u>

The Government asserts that "[b]ecause the blanket controllers do not measure the actual value of the voltage that is applied to the blankets, they cannot stabilize the voltage against disturbances by periodically measuring its actual value as required by Note 7(b)." The Government further states that "[e]ven if they could measure the voltage, the controllers cannot automatically adjust the amount of voltage being applied." Def.'s Mem. at 21 (citing Thomas Dep. at 68:8-14.) "Accordingly, the controllers are unable to regulate or adjust electrical quantities or stabilize voltage against disturbance; they are limited simply to restarting and shutting off." Def.'s Mem. at 21.

In support of its argument, the Government cites to a partial response in Dale Thomas' deposition in which he acknowledges that the blanket user can make an adjustment to the heat setting when there is "a volt variation that is going to have an ultimate impact on the temperature." Thomas Dep. at 68:8-14. Mr. Thomas then explains that it is not necessary for the blanket controllers to stabilize *the temperature* of the blanket as a result of the ambient temperature of the room. Thomas Dep. at 61:21-22. First, it would be impractical for electric blankets to respond to ambient room temperature as they have a large surface area that may vary

in temperature and the sunbeam blankets feature proprietary wire that self-regulates so it will not overheat. *Id*. at 70:17-19, 71:16-18. Further, while the controllers do not stabilize *temperature* against disturbances, the monitoring circuit within the blanket stabilizes the voltage applied to the blanket against disturbances.

As discussed above in Section I.A.iii, the Government admits in its response to PSMF paragraph 27 that the monitoring circuit "monitors" the voltage in the blanket and is used to "detect" when voltage is applied. Def's PSMF Response ¶ 27. The measurement, monitoring, and detection of the voltage in the blanket by the monitoring circuit demonstrates how the controllers stabilize the voltage against disturbances. As identified above, the monitoring circuit measures the voltage applied to the blanket by measuring to confirm that the voltage above the required threshold is present in the heating element. Thomas Decl. ¶ 24; Thomas Supp. Decl. ¶ 8. This measurement is converted into a waveform signal which is sent to the microprocessor. DSMF ¶¶ 19, 20, 28; Def's PSMF Response ¶¶ 27-29; Thomas Decl. ¶ 24; If the microprocessor continues to receive this measurement signal, the processor continues the pre-set duty cycle. If the PCT circuit does not detect voltage because the measurement is below the required amplitude, then no signal is sent and the microprocessor turns off the triac and voltage is no longer sent to the blanket. DSMF ¶¶ 28, 30-32; Def's PSMF Response ¶¶ 28-32; Thomas Decl. ¶¶ 25-27. In Mr. Thomas' deposition, he stated that the voltage necessary to maintain the desired heat level first "has to be up above a certain threshold," and

> [once] that's the case, the monitoring circuit will send the signal back and said okay, we've received something, and it falls within those parameters. And then it's up to the microprocessor to say what it sent back, it matches what we sent out, and then - - it's working or not working, depending on what the results of that adjudication is.

104:23-105:2-11. Accordingly, the controllers automatically regulate the voltage that is applied to the heating elements in the blanket. Thomas Decl. ¶ 11.

## II. The Blanket Controllers are Classifiable in Heading 9032 and are Therefore Excluded from Classification in Heading 8537

The Government asserts that the controllers are classifiable under heading 8537, HTSUS. *See* Def.'s Mem. at 14-19.

The General Rules of Interpretation ("GRIs") govern the classification of merchandise and are applied in numerical order. *Gerson Co. v. United States*, 898 F.3d 1232, 1235 (Fed. Cir. 2018). Under GRI 1, goods are classified "according to the terms of the headings and any relevant section or chapter notes." *Avenues in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005).

The blanket controllers are specifically provided for in heading 9032 and therefore are properly classified thereunder. By application of GRI 1, the controllers must be classified in heading 9032 and not in heading 8537.

As set forth in plaintiff's memorandum in support of its summary judgment motion, it is irrelevant whether the blanket controllers fit the description of Heading 8537. The controllers are precluded from classification in Heading 8537 by operation of the GRI 1 and Section XVI Note 1(m).

Section XVI Note 1(m) expressly excludes articles of Chapter 90 from classification in Chapter 85. The Section Note states, "[t]his section [XVI] does not cover: . . . (m) Articles of Chapter 90." The exclusion from classification in Heading 8537 is further emphasized by the

ENs to heading 8537, which state, "[t] heading does not cover automatic controlling apparatus of heading 90.32."

## CONCLUSION

There are no disputed material facts in this case. The subject controllers are classifiable as automatic regulating or controlling instruments or apparatus under subheading 9032.89.60, HTSUS. The Government has failed to establish that the controllers do not meet the requirements of Chapter 90, Note 7(b). For the foregoing reasons, plaintiff respectfully requests that the Court grant its motion for summary judgment and deny defendant's cross-motion for summary judgment.

In support of this memorandum, plaintiff also submits a Supplemental Declaration of Dale Thomas.

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
*Attorneys for Plaintiff*
599 Lexington Avenue, FL 36
New York, New York 10022
Tel. (212) 557-4000
KDobscha@gdlsk.com

/s/ Katherine A. Dobscha
Erik D. Smithweiss
Katherine A. Dobscha

Dated: November 20, 2026
New York, New York

**CERTIFICATE OF COMPLIANCE**

Pursuant to USCIT Standard Chambers Procedures Rule 2(B), I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 4,645 words including text, headings, footnotes, and quotations. This word count is within the limit of 7,000 words set forth in Rule 2(B).

/s/ Katherine A. Dobscha
Katherine A. Dobscha

Grunfeld, Desiderio, Lebowitz,
Silverman & Klestadt LLP
599 Lexington Ave., FL 36
New York, New York 10022

Dated: November 20, 2026
New York, New York